BRANDT et al. v. DAY.

(District Court, S. D. New York. September 16, 1913.)

BANKS AND BANKING (§ 96*)—CONTRACTS WITH CUSTOMER FOR PAYMENT OF DRAFTS—ACTION FOR BREACH.

Plaintiffs, as bankers, by arrangement with defendant, entered a credit on their books in favor of a company dealing in figs in Turkey, to be used by means of drafts with invoices of goods shipped to defendant attached, provided that the shipments should be made and the drafts negotiated prior to October 1st. A draft with invoice attached, dated September 28th, was presented to and accepted by plaintiffs, and defendant supplied the funds for its payment. *Held*, that plaintiffs were not liable for a loss sustained by defendant on the goods because the shipment and draft were in fact made after October 1st and fraudulently antedated, nor because defendant, merely on suspicion, notified them not to accept the draft; the papers being regular on their face and apparently within the contract.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 230; Dec. Dig. § 96.*]

At Law. Action by Augustus P. Brandt and others against Emily D. Day. On demurrer by plaintiffs to counterclaim. Demurrer sustained.

Bigelow & Wise, of New York City, for plaintiffs.
Herbert Goldmark, of New York City, for defendant.

HOLT, District Judge. This is a demurrer by the plaintiffs to a counterclaim set up in the defendant's answer. The counterclaim alleges, in substance, that plaintiffs, who are bankers, agreed with the defendant to open a credit for £3,000. in favor of the Smyrna Fig Packers, Limited, of Smyrna, Turkey, to be availed of by drafts drawn on plaintiffs for cost of figs purchased by defendant, provided shipments were completed and drafts negotiated before October 1, 1912; that a shipment was made and a draft drawn on October 9, 1912, but the bill of lading and draft were fraudulently dated on September 28, 1912; that before the draft was accepted, defendant, being suspicious that the goods had been shipped after October 1st, notified plaintiffs not to accept; that plaintiffs did accept; that after acceptance plaintiffs fraudulently stated to defendant that the goods had been shipped and the draft negotiated before October 1st, knowing that they had not been so shipped and negotiated; that defendant, relying on such statement, paid to plaintiffs funds necessary to meet the draft and accepted such shipment; that the goods sold for less than the amount advanced; and judgment is demanded for the amount of the loss.

The contract for credit provided that shipments were to be completed and drafts negotiated before October 1, 1912, and that duplicate invoices were to be attached to the drafts. It also provided that the plaintiffs should not be held responsible for the correctness or validity of the documents representing shipments. The defendant claims that the plaintiffs violated their contract by accepting the draft knowing that the goods had not been shipped or the draft negotiated before

October 1st, and by accepting the draft when it had no consular invoice attached. In respect to this last point I think the contract did not call for a consular invoice to be attached to the draft. That, in the ordinary course of business, would be sent to the importer to enable the goods to be entered in the custom house. The invoice attached to the draft and sent to the banker is usually a shipper's invoice, and I think that was the requirement of the contract in this case.

As to the point that the goods were shipped and the draft negotiated after October 1st, it must be borne in mind that the draft and bill of lading were dated September 28th, and were therefore regular on their face. Assuming that it was the plaintiffs' duty not to accept, if they knew that the shipment had been made after October 1st, all that appears is that the defendant, being suspicious that the shipment had been made too late, notified the plaintiffs not to accept. But the plaintiffs had confirmed their credit to the Fig Company at Smyrna, the vendors of the goods; the bill of lading and draft, when presented for acceptance, were dated September 28th; and in my opinion, the plaintiffs, under such circumstances, had no right to dishonor the draft, which had perhaps been negotiated after acceptance, merely because the defendant was suspicious. They were obliged to accept by their obligation to the Fig Company under their contract of credit, and by the provisions of their contract with defendant they were not to be held responsible for the correctness or validity of the documents.

The allegation that the plaintiffs were guilty of fraud in stating, after acceptance, that the goods has been shipped before October 1st, and by such statement induced the defendant to put them in funds to meet the draft, seems to me immaterial. The plaintiffs, having accepted the draft, were bound to pay it, and the defendant, by the contract, was bound to put the plaintiffs in funds to meet the draft. That obligation was not created, and could not be affected, by any statement made after acceptance.

If the Fig Company contracted with the defendant to ship the figs before October 1st, and the other allegations of the counterclaim are correct, the defendant apparently may have a cause of action against the Fig Company for breach of contract; but I cannot see that she has any ground of action against the bankers.

The demurrer is sustained.